NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0245n.06

No. 22-1348

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Jun 01, 2023
DEBORAH S. HUNT, Clerk

PHILLIP CHARLES GIBBS, )
)
    Petitioner-Appellant, )
)
v. )
)
BECKY CARL, Warden, )
)
    Respondent-Appellee. )
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

OPINION

Before: BOGGS, CLAY, and WHITE, Circuit Judges.

BOGGS, Circuit Judge. Phillip Charles Gibbs, a Michigan prisoner, appeals the district court's denial of his 28 U.S.C. § 2254 petition for a writ of habeas corpus. We affirm.

**I**

In October 2010, Tyrell Henderson and Phillip Gibbs robbed Costas and Nancy Anagnostopoulos's pawnshop in Flint, Michigan. Henderson had entered the store to return a video game that he had purchased earlier that day. While Costas was examining the game, Henderson struck him in the head with a gun. Gibbs, who was not armed, approached Nancy and took her jewelry, purse, and identification. He also took an iPod and some laptop computers from the store. A police search of Gibbs's home uncovered items stolen from the store. After his arrest, Gibbs admitted his involvement but claimed that he robbed the store owners out of fear of, and under orders from, Henderson.

Gibbs and Henderson had a joint trial with separate juries. In 2011, just before the start of Gibbs's voir dire proceedings, the state trial judge said that "if any spectators would like to come

in [for jury selection] they're welcome but they do have to sit over here by the law clerk, not in the middle of the pool." The court then proceeded to pick the jury, which ultimately convicted Gibbs of two counts of armed robbery pursuant to Mich. Comp. Laws § 750.529, one count of unarmed robbery pursuant to Mich. Comp. Laws § 750.530, and one count of conspiracy to commit armed robbery pursuant to Mich. Comp. Laws §§ 750.157a and 750.529.

After his sentencing, Gibbs learned that his mother, sister, and brother-in-law had tried to enter the courtroom during jury selection but had been denied entry. These family members supplied sworn affidavits in support of Gibbs's direct appeal to the Michigan appellate court, stating that they were "turned away at the door" and consequently "waited in the hallway." Their affidavits further explained that they eventually left the courthouse "after being told that jury selection would take all day," but were able to enter the courtroom the next day, "after the jury had been picked."

Gibbs appealed his conviction to the Michigan Court of Appeals, arguing that his sentence was incorrectly calculated and that the state trial court violated his Sixth Amendment right to a public trial when it prevented his family members and other members of the public from entering the courtroom during voir dire. The Michigan Court of Appeals remanded the case to the trial court for Gibbs to file a motion for resentencing and a motion for a new trial and ordered the trial court to conduct an evidentiary hearing on the courtroom-closure issue. *People v. Gibbs*, 830 N.W.2d 821, 824 (Mich. Ct. App. 2013) (per curiam).

On remand, the trial judge did not hold an evidentiary hearing but instead explained her practice of closing the courtroom to members of the public that arrive after voir dire has begun:

> [O]nce we start with the [jury] selection in filling the seats, I do not allow anybody to come or go. . . . If they came after we started then they would not have been allowed in. I absolutely agree. . . . So I don't think there's much else I can say of that. I can't troll in the halls for spectators.

. . .

> I'm telling you, after we start, when the panel is in the room, you're absolutely right no one would be coming or going. I agree with that. If that's a violation, then I violated. I don't have them in afterwards of that period nobody comes and goes. And if a juror has to go to the bathroom, the deputy or court clerk has to take them. We can't do that during jury selection. It's much too confusing.

R.8-17, PageID 1218–20. Subsequently, the state trial court denied Gibbs's motion for a new trial and motion for resentencing.

Gibbs appealed again, arguing that he is entitled to an "automatic reversal" based on the court's violation of his right to a public trial. The Michigan Court of Appeals agreed that the trial court had not held an evidentiary hearing as directed, but held that Gibbs was not entitled to a new trial or an evidentiary hearing. *Gibbs*, 830 N.W.2d at 824–25. Because Gibbs did not object to the closure at trial, the court applied plain-error review to his constitutional claim and concluded that Gibbs had not established any error from the trial court's closure of the courtroom once jury selection began, let alone an error that entitled Gibbs to a new trial. *Id.* at 824–25. The Michigan court reasoned that there was no error because "venire itself was present" and "both parties engaged in vigorous voir dire, there were no objections to either party's peremptory challenges, and each side expressed satisfaction with the jury." *Id.* at 825. The Michigan Supreme Court denied leave to appeal. *People v. Gibbs*, 838 N.W.2d 875 (mem.) (Mich. 2013).

Following his state-court proceedings, Gibbs petitioned for habeas relief, claiming that the courtroom closure denied him the right to a public trial. The district court denied relief, holding that, under *Bickham v. Winn*, 888 F.3d 248 (6th Cir. 2018), Gibbs had procedurally defaulted his claim by failing to object during voir dire to the state trial court's courtroom closure. The district court granted a certificate of appealability.

On appeal, we held that Gibbs's failure to object did not constitute procedural default if he was not and could not reasonably have been aware of the courtroom closure. *Gibbs v. Huss*, 12 F.4th 544, 554–55 (6th Cir. 2021). We remanded for the district court to determine: (1) whether Gibbs knew or should have known of the courtroom closure, and (2) whether, if Gibbs procedurally defaulted his claim, he had cause and prejudice to excuse the default. *Id.* at 555.

On remand, the district court held an evidentiary hearing and concluded that Gibbs had procedurally defaulted his claim because his trial attorney, Jeffrey Skinner, had been aware of the courtroom closure. Skinner testified that he had appeared before Gibbs's trial judge "[m]any times" and was aware of her voir dire policy. Skinner also stated that he did not think that the policy was objectionable because he did not "want any distractions" during voir dire, when "a hundred percent of [his] attention is directed at" the proceedings.

The district court also held that ineffective assistance of counsel did not exist to excuse Gibbs's procedural default. According to the court, Skinner's failure to object to the courtroom closure was not deficient performance for two reasons. First, the court did not think it "obvious" that "any reasonable attorney in Skinner's position would have spotted" the state trial court's alleged violation of Supreme Court courtroom-closure precedent and "would have immediately objected" to the closure. Second, the court noted that even if the courtroom closure was an obvious constitutional violation, Skinner's failure to object did not amount to deficient performance because Skinner had a "reasonable strategic reason" for withholding his objection. The court also held that Gibbs had not shown prejudice from Skinner's failure to object. Gibbs had not shown actual prejudice—that is, a reasonable probability that the outcome on direct appeal would have been different if Skinner had objected during voir dire—because the Michigan appellate court had found no error at all with the trial court's closure. Nor had Gibbs distinguished his case from

*Weaver v. Massachusetts*, 137 S. Ct. 1899 (2017), to show that the courtroom closure rendered his trial fundamentally unfair.

The district court granted Gibbs a certificate of appealability, and Gibbs timely appealed.

**II**

Gibbs claims in his § 2254 petition that the state trial court violated his Sixth Amendment right to a public trial by closing the courtroom during voir dire to members of the public who arrived after proceedings had begun. The Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. However, "the right to an open trial may give way in certain cases to other rights or interests." *Waller v. Georgia*, 467 U.S. 39, 45 (1984). To justify the partial closure of a courtroom, "the trial court must balance the interests favoring closure against those opposing it." *Drummond v. Houk*, 797 F.3d 400, 404 (6th Cir. 2015).

We review de novo a district court's denial of habeas relief. *Chase v. MaCauley*, 971 F.3d 582, 591 (6th Cir. 2020). However, we "will not entertain a procedurally defaulted constitutional claim . . . absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley*, 541 U.S. 386, 388 (2004). On appeal, Gibbs concedes procedural default but argues that the ineffective assistance of his trial counsel provides sufficient cause and prejudice to excuse the default.

Ineffective assistance of counsel in state court can excuse procedural default. *See Williams v. Burt*, 949 F.3d 966, 973 (6th Cir. 2020). Whether Skinner was ineffective is a question that we review de novo. *Hall v. Vasbinder*, 563 F.3d 222, 236 (6th Cir. 2009).

To establish ineffective assistance, Gibbs must show both that his trial counsel's performance was so deficient that it "fell below an objective standard of reasonableness" and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 688

(1984). In this context, where Gibbs "raises a public-trial violation via an ineffective-assistance-of-counsel claim, *Strickland* prejudice is not shown automatically." *Weaver*, 137 S. Ct. at 1911. Rather, he must show either "a reasonable probability of a different outcome" in his case or show that the public-trial "violation was so serious as to render the trial fundamentally unfair." *Williams*, 949 F.3d at 978 (quoting *Weaver*, 137 S. Ct. at 1911). We "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697.

Gibbs fails to establish *Strickland* prejudice. Gibbs does not argue a reasonable probability that the outcome of his trial would have been different had his trial counsel objected to the closure order. And, as the district court noted, the courtroom was open during most of Gibbs's trial. Members of the public present at the start of voir dire proceedings were permitted to stay, and Gibbs's trial was otherwise open to the public. The partial pre-trial courtroom closure did not render the trial unfair.

Gibbs claims prejudice from Skinner's failure to object to the courtroom closure, arguing that he would have otherwise prevailed on appeal. Had Skinner objected, Gibbs argues, the Michigan appellate court would have reviewed Gibbs's public-trial claim de novo, not for plain error, which "made a critical difference" in the outcome of Gibbs's appeal. When a petitioner asserts ineffective assistance of appellate counsel, we ask whether, but for that counsel's errors, the petitioner might have prevailed on appeal. *See Chase*, 971 F.3d at 595. However, since Gibbs claims ineffective assistance of trial counsel, he must show a reasonable probability that the outcome of his *trial* would have been different. *See Weaver*, 137 S. Ct. at 1912 (describing "prejudice in the ordinary sense" as "a reasonable probability that the jury would not have convicted him if his attorney had objected to the closure"); *Jones v. Bell*, 801 F.3d 556, 563 (6th

Cir. 2015) ("We rather look to the record to determine if the outcome *of the trial* would have been different."). Even if we agreed with Gibbs that the reasonable probability of a different outcome on appeal suffices, Gibbs has not met that burden. The Michigan appellate court held that the partial courtroom closure did not deny Gibbs his right to a public trial. *Gibbs*, 830 N.W.2d at 825. That the appellate court found no error at all suggests that it would have also rejected Gibbs's public-trial claim de novo.

Gibbs also suggests that we can presume prejudice in his case because a courtroom closure is a "structural error," one "so serious as to render his . . . trial fundamentally unfair." We find unconvincing Gibbs's efforts to distinguish his case from binding precedent that prevents us from presuming prejudice.

In *Weaver*, the Supreme Court refused to presume prejudice for a defaulted public-trial claim. 137 S. Ct. at 1911 ("[N]ot every public-trial violation will in fact lead to a fundamentally unfair trial . . . . [W]hen a defendant raises a public-trial violation via an ineffective-assistance-of-counsel claim, *Strickland* prejudice is not shown automatically."). Gibbs offers three reasons to distinguish his case from *Weaver*: (1) the closure in Gibbs's case was a "routine, unconstitutional practice," unlike the "simple one-time error" in *Weaver*; (2) court officers, not the judge, decided to close the courtroom in *Weaver*; and (3) Gibbs raised his public-trial claim on direct appeal. The district court rejected these reasons, and we reject them too. We agree with the district court that Gibbs's first two reasons "merely restate what the alleged violation in this case was" and do not explain why they made Gibbs's trial fundamentally unfair. As to his third point, Gibbs glosses over the fact that he failed to preserve his public-trial claim at trial, just as Weaver did. *Weaver*, 137 S. Ct. at 1913. Gibbs also raises his ineffective-assistance claim on habeas, placing him on equal—if

not weaker—procedural footing with the unsuccessful petitioner in *Weaver* who claimed ineffective assistance on direct review. *Id.* at 1913–14.

Because Gibbs has not established prejudice from his trial counsel's failure to object to the courtroom closure, he cannot excuse his procedural default and we may not review his habeas claim on the merits.

### III

For the reasons above, the judgment of the district court is **AFFIRMED**.